**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| D.W., *a minor, by and through her next friend and Mother*, DILISHA WORTHY, | ) |
| | ) |
| | ) |
| Plaintiff, | )    Case No. 1:25-cv-05738 |
| | ) |
| v. | )    Judge Sharon Johnson Coleman |
| | ) |
| BOARD OF EDUCATION OF COOK COUNTY SCHOOL DISTRICT 130, | ) |
| | ) |
| | ) |
| Defendant. | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff, D.W., a minor, by and through her next friend and Mother, Dilisha Worthy ("Plaintiff") filed suit against Defendant, Board of Education of Cook County School District 130 ("Defendant") alleging violations of Title VI of the Civil Rights Act of 1964 and Title IX of the Education Amendments of 1972 stemming from the middle school's alleged mistreatment of Plaintiff based on her race and gender. Defendant filed a Motion to Dismiss ("Motion") Plaintiff's claims, pursuant to Fed. R. Civ. P. 41(b). For the reasons set forth below, the Court denies Defendant's Motion [38].

**BACKGROUND**

**A. Factual Background**

The following allegations are taken from Plaintiff's Second Amended Complaint (hereinafter, "Complaint"), Dkt. 20.

D.W. is an African American, female student attending Kerr Middle School. She alleges the negative treatment due to her race and gender during the 2024-2025 school year from various teachers.

In the fall of 2024, an unspecified teacher "yelled and screamed" at Delisha without provocation and that she was removed from a class "due to the teacher grading and treating her unfairly" compared to students of other races. In December of 2024, D.W.'s science teacher "asked her to clean an entire lunch table" with napkins from her lunch bag and that the same science teacher told D.W. that a reindeer on her Christmas sweater "looked deceased" like it was "screaming" and like it was "pleading for help."

In January of 2025, D.W.'s reading teacher changed her grade from an "A" to a "C," D.W.'s science teacher changed her grade from a "B" to a "D," and another unspecified teacher altered D.W.'s grades to marks lower than the "final" grades previously entered in the school's portal. Later that month, on or around January 30, 2025, when D.W.'s math teacher dressed as the "Queen Ruler of Flowers" she asked D.W., and no other student, to bow before her.

In February of 2025, D.W.'s homeroom teacher required D.W. to serve lunch detention without notifying her mother, despite her mother's January 9, 2025, request that she be notified before her daughter serve any detentions. Finally, On or around March 4, 2025, D.W.'s reading teacher changed her grade from a "C" to an "F."

Plaintiff's Complaint concludes all of these incidents "constitute the violation of [D.W.'s] civil rights," entitling her to $10,000,000.00 in damages.

### B. Procedural Background

Plaintiff initially filed her complaint in the Cook County Court for the Sixth Municipal District on April 18, 2025. On May 22, 2025, Defendant removed Plaintiff's complaint to federal court as it alleged violations of federal law.

On May 23, 2025, this Court set an in-person status hearing for July 23, 2025, and directed the parties to meet, discuss the case, settlement, and whether the parties consented to proceed before the magistrate judge. The parties were also directed to file a joint status report prior to the status hearing.

2

On May 28, 2025, Defendant filed a motion for a more definite statement arguing the Complaint was so ambiguous that Defendant did not have notice of what Plaintiff was claiming and was unable to prepare an answer. Defendant's counsel sent Plaintiff the motion and notice that the motion hearing was set for June 3, 2025. Plaintiff did not appear for the motion hearing or contact the Court. At that hearing, this Court granted Plaintiff leave to amend her Complaint by July 3, 2025.

On June 3, 2025, Defendant's counsel emailed Plaintiff and asked her to meet to discuss the case as directed by this Court and notified her that a joint report would be due mid-July. Plaintiff did not respond. On June 11, 2025, Defendant's counsel emailed the Plaintiff again and asked for dates to meet to discuss her concerns. Plaintiff did not respond. On June 25, 2025, Defendant's counsel emailed the Plaintiff a third time and asked when she was available to discuss her concerns and the reason she filed a complaint. Plaintiff did not respond or return Defendant's counsel's subsequent phone call.

Because Plaintiff did not file an amended complaint by July 3, 2025, as directed by the Court, Defendant filed a motion to dismiss Plaintiff's Complaint on July 7, 2025. This Court dismissed Plaintiff's Complaint without prejudice and warned Plaintiff that if she did not file an amended complaint by July 30, 2025, her complaint would be dismissed with prejudice. On July 17, 2025, Plaintiff filed a motion to deny Defendant's motion to dismiss and filed an amended complaint on July 23, 2025. Defendant's counsel sent Plaintiff another email on July 25, 2025, asking if she was willing to meet before school started. On July 28, 2025, Defendant filed a motion to dismiss Plaintiff's Amended complaint with prejudice because it remained so vague and ambiguous that Defendant could not reasonably prepare a response. Defendant's counsel sent Plaintiff the motion and notice of motion hearing scheduled for August 5, 2025. Plaintiff failed to show for the August 5, 2025, motion hearing and did not contact the Court. The Court dismissed Plaintiff's Amended Complaint without prejudice, granted Plaintiff leave to file a second amended complaint by August 26, 2025, and set a

3

status hearing for August 26. Plaintiff filed her Second Amended Complaint on August 25, 2025, and at the August 26, 2025, status hearing, the Court admonished Plaintiff in the minute order that if she did not file a second amended complaint or did not appear at the status hearing, her complaint may be dismissed with prejudice.

On August 26, 2025, Plaintiff attended the status hearing and reported that she had emailed her Second Amended Complaint to the Hibbler Pro Se Help Desk. This Court informed Plaintiff that the Complaint would be reviewed and that Plaintiff needed to communicate with Defendant's counsel. Defendant's counsel sent Plaintiff another email on August 28, 2025, asking if she would meet with the Defendant's Superintendent and Defendant's counsel. Plaintiff responded that previously she had sent email correspondence requesting a meeting with the Superintendent and President of the Board of Education. Defendant's counsel asked again on August 29, 2025, if Plaintiff would meet to address any concerns for the upcoming school year. Plaintiff again declined a meeting, stating that she was emailing the principal about a concern she had.

On September 26, 2025, this Court, through a minute order, deemed Plaintiff's Complaint, and a Supplement filed by Plaintiff on September 24, 2025, appropriate and ordered Defendant to file an Answer by October 17, 2025. Defendant filed an Answer to Plaintiff's Complaint on October 16, 2025, pursuant to the Court's Order. The Court set a status hearing for November 5, 2025, and requested that a joint status report be filed before the status hearing. On October 23, 2025, Defendant's counsel sent this Court's Joint Initial Status Report format to Plaintiff and requested to meet with Plaintiff either in a telephone conference or in a meeting through the Zoom virtual platform to together draft the joint status report and offered to file the report when it was agreed upon. Plaintiff responded that she would only communicate in writing. Despite Defense counsel' attempts to facilitate communication, on October 29, 2025, Plaintiff unilaterally filed a "Joint Status Report" that included inaccurate information, did not include required information, and falsely represented to the

4

Court that Defendant's counsel was not cooperating in the report's preparation. Defendant filed a motion to strike the unilaterally filed Joint Status Report on October 30.

At the status hearing on November 5, 2025, this Court admonished Plaintiff for failing to speak to and cooperate with Defendant's counsel to file a joint statement. Additionally, the Court scheduled a settlement conference on November 17, 2025, and assigned Plaintiff counsel for the settlement conference on November 10, 2025. The settlement conference was ultimately unsuccessful. This Court then asked Defendant's and Plaintiff's counsel to continue to discuss possible settlement and the possibility for implementing a "communication protocol" to ensure proper communication between Plaintiff and the School District going forward since her daughter is still a student. Counsel for the parties attempted to negotiate a communication protocol but Plaintiff's counsel reported to Defendant's counsel that Plaintiff was not interested in discussing a protocol. Plaintiff continued to maintain her settlement position and did not deviate from her demand of $10,000,000.00.

**LEGAL STANDARD**

Under the Federal Rule of Civil Procedure 41(b), a court may dismiss an action with prejudice "if the plaintiff fails to prosecute or to comply with [the Federal Rules of Civil Procedure] or any court order." FED. R. CIV. P. 41(b). Although courts must construe *pro se* pleadings liberally, *McGee v. Bartow, 593 F.3d 556*, 566–67 (7th Cir.2010), a plaintiff's *pro se* status does not absolve them from complying with the federal and local procedural rules. *See Pearle Vision, Inc. v. Romm*, 541 F.3d 751, 758 (7th Cir. 2008). The sanction of dismissal is the most severe sanction that a court may apply, and its use must be tempered by a careful exercise of judicial discretion. *McMahan v. Deutsche Bank AG*, 892 F.3d 926, 931 (7th Cir. 2018) (internal citations omitted). Due to the harshness of such a sanction, there should be a record of delay, contumacious conduct, or a showing that lesser sanctions are unavailable. *Thomas v. Wardell*, 951 F.3d 854, 862 (7th Cir. 2020).

## DISCUSSION

In its Motion, Defendant argues Plaintiff's claims should be dismissed under Rule 41(b) because she has consistently failed to appear for status hearings, failed to follow court orders, failed to meaningfully participate in the settlement conference, and caused prejudice to the Defendant through her Motion practice. (Dkt. 38 at *6-7.) Additionally, Defendant argues that because Plaintiff fails to state a claim on the merits, dismissal is appropriate. (*Id.* at *8.) In response, Plaintiff argues Defendant has not proven her intentional disregard or willful failure to prosecute since most of her missteps stemmed from her *pro se* status and because she complied with Court orders after she received additional clarification. (Dkt 43 at *1.) She concludes, the sanction of dismissal with prejudice is not warranted here, where lesser measures are available. (*Id.*)

The Court addresses the parties' arguments in turn.

### I. Failure to Prosecute Analysis

The Seventh Circuit has directed district courts to consider the following factors when entertaining a Rule 41(b) motion:

> (1) [T]he frequency and magnitude of the plaintiff's failure to comply with deadlines for the prosecution of the suit; (2) apportionment of responsibility for those failures between the plaintiff and his counsel; (3) the effect of those failures on the judge's calendar and time; (4) the prejudice if any to the defendant caused by the plaintiff's dilatory conduct; (5) the probable merits of the suit; and (6) the consequences of dismissal for the social objectives of the type of litigation that the suit represents.

*Id.* (citing *Aura Lamp & Lighting Inc. v. Int'l Trading Corp.*, 325 F.3d 903, 908 (7th Cir. 2003)). Importantly, and as the Seventh Circuit has advised district courts to do, a plaintiff should be warned that their failure to comply with the court's orders or promptly move forward with discovery could result in the dismissal of their case. *See Brown v. Columbia Sussex Corp.,* 664 F.3d 182, 190 (7th Cir.2011) ("[W]e encourage district courts to provide an explicit warning before a Rule 41 dismissal."). The Court first addresses the parties' arguments as to factors 1-4.

Defendant argues the Court should dismiss Plaintiff's Complaint because all of the factors the Court considers when granting a Rule 41(b) motion, weigh in Defendant's favor. Specifically, Defendant argues Plaintiff repeated failures to appear and follow the Court's orders prejudiced Defendant by costing it unnecessary time and money and negatively impacted the Court's and the Court appointed settlement Counsel's time. (*See* Dkt. 38 at *6-7.) Defendant also argues that it was further prejudiced by Plaintiff's refusal to alter her "unreasonable" settlement position or otherwise meaningfully participate in settlement negotiations. (*Id.* at 5, 7.) Defendant aregues, because this Court has admonished Plaintiff to cooperate on various dates and has warned her that failure to follow Court orders would result in dismissal of her case, these repeated failures warrant dismissal.

In response, Plaintiff argues She specifically argues that the record does not show any failure to prosecute, but in fact shows the opposite, since Plaintiff has actively filed amended pleadings as requested and permitted, appeared at status hearings, complied with the *pro se* help desk's instructions, and actively participated in the November 17, 2025, settlement conference. (*See* Dkt. 43 at *1.) She emphasizes that any prior procedural missteps were not willful but instead reflect "early procedural confusion typical for a pro se litigant," including her unawareness that her case was removed to federal court. (Dkt. 43 at *2.) Finally, Plaintiff argues any suggestion that she should be sanctioned for maintaining her settlement position, her decision not to settle, and her refusal to agree to a proposed communication protocol, is improper. (*Id.*) She emphasizes that settlement is voluntary, not mandatory, and that she cannot be sanctioned for choosing to litigate her claims rather than settle as it is her right to move forward with her adjudication. (*Id.*) She concludes any concern with her prior failures can be addressed through lesser sanctions in accordance with Seventh Circuit precedent governing *pro se* litigants. (*Id.*)

Based on the Court's review of the record and the Court's own involvement in this case, the Court determines that lesser sanctions for Plaintiff's failures, at least as they relate to factors 1-4, would

be more appropriate. While the Court acknowledges the severity of Plaintiff's earlier failures to prosecute, such that the Court even dismissed her case without prejudice, the Court is also aware that Plaintiff has faithfully prosecuted her case since filing her Second Amended Complaint, with only a few nominal missteps. While the earlier record demonstrates extensive delay attributed to the Plaintiff, the Court acknowledges that at least some of the earlier delays stemmed from Plaintiff's unfamiliarity with the removal of her case to federal court, confusion about procedural requirements, and unfamiliarity with the law. *See Long v. Steepro*, 213 F.3d 983, 988 (7th Cir.2000) (holding that the *pro se* plaintiff's actions "were not abusive, contumacious, or without satisfactory explanation" but suggested a misunderstanding and lack of familiarity with the law") (internal citations omitted); *also see Mlaska v. Schicker*, 745 F. Appx. 625, 627 (7th Cir. 2018)(holding a *pro se* plaintiff's confusion should not be read as a record of delay or contumacious behavior). Importantly, while Plaintiff missed numerous status hearings in the earlier part of 2025, she has not missed a single status hearing since filing her operative Complaint in August of that same year. She has also timely responded to filing deadlines related to the present Motion, participated in a settlement conference, and improved her communication with Defendant after the Court's prior dismissals without prejudice and admonishments.

Finally, the Court is unconvinced by Defendant's assertion that Plaintiff did not meaningfully participate in a settlement conference because her settlement position was "unreasonable." Plaintiff is correct that a judge may not threaten to penalize a party for refusing to settle. *See Montgomery v. Vill. of Posen*, 711 Fed. Appx. 343, 345 (7th Cir. 2018). Like any party, she was not required to accept the trial court's (or Defendant's) view of the best litigation strategy, including whether to accept a settlement offer in light of her limited chance of other recovery. *See Paz v. Portfolio Recovery Associates,*

*LLC*, 924 F.3d 949, 955 (7th Cir. 2019). While Plaintiff's likelihood of recovery may be slim, she is within her right to maintain her position and litigate her claims in lieu of settlement.[1]

## II. Merits Analysis

Having determined factors 1-4 do not merit dismissal with prejudice, the Court now weighs that conclusion with its analysis of factors 5-6: (5) the probable merits of the suit; and (6) the consequences of dismissal for the social objectives of the type of litigation that the suit represents. It is entirely proper for a judge to consider the likely merits of the suit in deciding whether to dismiss it for failure to prosecute. *Sandle v. Wal-Mart Stores, Inc.*, 16 CV 4157, 2018 WL 1138544, at *6 (N.D. Ill. Mar. 2, 2018) (Cox, J.) (citing *Ball v. City of Chicago*, 2 F.3d 752, 759 (7th Cir. 1993)). Moreover, "the less meritorious the suit, the less likely is it that dismissing it will impair the deterrent and compensatory objectives of the law under which the plaintiff was proceeding, by letting a wrongdoer get off scot-free." *Id.* In some instances, where a plaintiff fails to sufficiently allege a claim, consequences of dismissal under Rule 41 are minimal. *E.g. Price v. City of Chicago*, 2016 WL 305355, *4 (N.D. IL 2016)(Darrah, J.)

Defendant argues that factors 5-6 also weigh in its favor because there is no merit to Plaintiff's race and gender discrimination claims. She does not allege any discrimination, severe or pervasive conduct, or any harm. (Dkt. 38 at *8.) Since she does not allege any policy of discrimination, Defendants argue dismissal of her case has no negative consequences. (*Id.*) Plaintiff failed to respond to Defendant's arguments regarding the merits of her case and therefore waives any argument to the contrary. *See Bonte v. U.S. Bank, N.A.*, 624 F.3d 461, 466 (7th Cir. 2010) ("[f]ailure to respond to an argument ... results in waiver."). Unfortunately for Defendant, however, even if the Court acknowledges Plaintiff's waiver and accepts Defendant's contention that Plaintiff's claims lack merit,

---

[1] This Court notes that, in the event of a bench trial, the case will be heard by a different judge due to this Court's participation in the parties' settlement conference.

that argument affects just two of the six factors the Court must consider when resolving a Rule 41(b) motion to dismiss. Having determined the other factors weigh in Plaintiff's favor, the Court will not dismiss Plaintiff's claims under Rule 41 (b) based on these two factors, alone.[2] On balance, considering the record, at least as it relates to Plaintiff's prosecution of her Second Amended Complaint, the factors do not favor the harsh and severe sanction of dismissal with prejudice. Regarding her failure to prosecute her case prior to filing her Second Amended Complaint, because at least some of her failures were attributed to her willful misconduct, lesser sanctions, such as ordering Plaintiff to pay Defendant's costs for litigating the present Motion, are available and more appropriate.

**CONCLUSION**

For the foregoing reasons, Defendant's Motion to Dismiss Plaintiff's Second Amended Complaint pursuant to Rule 41(b) is denied.

**IT IS SO ORDERED.**

Date: 5/4/2026

Entered: _____
          SHARON JOHNSON COLEMAN
          United States District Judge

---

[2] The Court acknowledges, had Defendant brought a Motion to Dismiss pursuant to Rule 12(b)(6), for failure to state a claim, the outcome of its motion may have differed.